**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EVETTA HAROLD and KIM MCMANUS,

Plaintiffs,

v. Case No.: ____________

JOHN L. RATCLIFFE, Director,
Central Intelligence Agency,

Defendant.

---

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

Plaintiffs Evetta Harold and Kim McManus, by and through their undersigned counsel, bring this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and allege as follows:

## NATURE OF THE ACTION

1. This is an action for employment discrimination based on race (African American) and retaliation for protected Equal Employment Opportunity activity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16.
2. Plaintiffs seek compensatory damages, attorney's fees, costs, and such other relief as the Court deems appropriate.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-16(c) and 28 U.S.C. § 1331.
4. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-16(c) and 28 U.S.C. § 1391(e).
5. Plaintiffs have exhausted their administrative remedies. On June 16, 2023, Plaintiffs filed formal complaints of discrimination with the CIA. The Department of Justice Complaint

Adjudication Office issued a Final Agency Decision on August 8, 2025. This complaint is timely filed within ninety days of receipt of the Final Agency Decision.

## PARTIES

6. Plaintiff Evetta Harold is an African American woman who served as Director of the CIA's Office of Equal Employment Opportunity from June 2019 until her removal on May 23, 2023. Ms. Harold had over thirty years of distinguished service with the CIA. She retired from federal service at the end of February 2024.
7. Plaintiff Kim McManus is an African American woman who served as Deputy Director of the CIA's Office of Equal Employment Opportunity from October 2019 until her removal on May 23, 2023. Ms. McManus had over thirty years of distinguished service with the CIA. She retired from federal service at the end of March 2024.
8. Defendant John L. Ratcliffe is sued in his official capacity as Director of the Central Intelligence Agency during the tenure of William J. Burns.

## FACTUAL ALLEGATIONS

9. Plaintiffs assumed their leadership positions in the Office of Equal Employment Opportunity in June and October 2019, inheriting an office with significant operational and performance challenges.
10. Plaintiffs began reporting to Chief Operating Officer M.B., a white woman, in September 2021.
11. After awaiting the agency's decision regarding their filed grievance, plaintiffs received notice of right to sue on August 24, 2025.
12. Plaintiffs implemented reforms to improve transparency, consistency, and effectiveness of the Agency's equal employment opportunity programs, achieving measurable improvements that earned recognition from the Director of Central Intelligence and the Director of National Intelligence (DNI).
13. The Cummings Act, enacted January 1, 2021, required that EEO Directors report directly to agency heads. Plaintiffs raised compliance concerns with CIA leadership regarding the Agency's reporting structure, which had them reporting to the COO rather than the Director.

13. Throughout Plaintiffs' tenure, COO Burns subjected them to a pattern of discriminatory treatment that differed markedly from her treatment of white officials in comparable positions.
14. COO Burns repeatedly characterized Plaintiffs as "confused" when they provided professional assessments that differed from her views, invoking harmful racial stereotypes about the intellectual capabilities of Black professionals.
15. COO Burns routinely bypassed Plaintiffs and entertained direct communications from white officials who complained about EEO processes, accepting their accounts without question while failing to afford Plaintiffs the courtesy of hearing their perspectives.
16. COO Burns improperly interfered in EEO case operations, possessing detailed knowledge about confidential ongoing cases and involving herself in specific matters to protect favored officials, particularly in the high-profile "scarf case" where she directed officials to withhold required cooperation with the EEO Anti-Harassment Program process.
17. Plaintiffs repeatedly requested additional resources and neutral attorneys for the Office of Equal Employment Opportunity. COO Burns consistently rejected or ignored these requests while simultaneously providing robust support and resources to other Agency components led by white officials, particularly white women.

18. In January 2023, during a meeting attended by Plaintiffs and the Chief of Staff of the Office of Equal Employment Opportunity, COO Burns confronted Plaintiffs in an aggressive and animated manner, using emphatic hand gestures.
19. COO Burns stated that the EEO process was "broken, no one understands it, and no one uses it," and repeated multiple times, "I've got to do something," in a tone that Plaintiffs and the Chief of Staff perceived as threatening.
20. COO Burns characterized the relationship between the Office of Equal Employment Opportunity and the Office of General Counsel as a "war," framing Plaintiffs' legitimate concerns about conflicts of interest as creating conflict.
21. The Chief of Staff found COO Burns's statements threatening and later expressed his opinion that COO Burns would not have spoken to Caucasian employees in that manner,

basing this assessment on the pattern of support the office received after Plaintiffs were removed compared to the treatment they received while in their positions.

22. In 2022, during a briefing on the Agency's MD-715 compliance, Plaintiffs raised concerns about harassment, hostile work environment, and abuse of authority with the Director and Deputy Director of the CIA.This was the first notification, and no action was taken. Plaintiff's made other notification to the Director and Deputy Director but no actions were taken to protect Plaintiff's from their alleged harasser.
23. In March 2023, Plaintiffs formally reported their concerns to the Deputy Director of the CIA, informed him of their intent to file EEO complaints, and requested that their reporting structure be changed so they would no longer report to COO Burns. The Deputy Director took no action.
24. In April 2023, Plaintiffs reported their concerns to the Agency Ombuds Officer and met again with the Director of Central Intelligence, describing the treatment they had endured and requesting to report directly to him. The Director declined to change the reporting structure.
25. Also in April 2023, Plaintiffs reported their concerns to the Intelligence Community Inspector General as whistleblowers, providing extensive documentation of harassment, discrimination, and management misconduct, including COO Burns's interference in EEO operations as defined by law.

26. Within hours of meeting with the Intelligence Community Inspector General in May 2023, Plaintiffs received urgent telephone calls directing them to return to CIA headquarters immediately.
27. On May 23, 2023, COO Burns informed Plaintiffs that the Office of Inspector General had completed an investigation finding they had violated Agency regulations. She characterized the report as "scathing" and containing "hundreds of pages of derogatory information."
28. Security personnel were already positioned and waiting to escort Plaintiffs from the building before COO Burns informed them of the investigation's findings, indicating the decision to remove them under security escort had been made in advance.

29. This treatment was unprecedented, extraordinary, and punitive, particularly given that Plaintiffs had never engaged in any threatening or inappropriate conduct and each had over thirty years of exemplary service, including Ms. Harold's career in the Office of Security and Ms. McManus's service in the Office of Inspector General.
30. When Ms. McManus indicated she wished to return to her career service position in the Office of Inspector General, COO Burns explicitly forbade it and directed her to report to the Office of Security instead.

31. Prior to the Plaintiffs, the Inspector General (IG) did not conduct EEO harassment investigations, the IG referred harassment issues to internal EEO and management for processing. The Inspector General investigation cited as justification for removing Plaintiffs was fundamentally flawed and reflected discriminatory animus.
32. COO Burns herself requested that the Inspector General conduct the investigation and identified it as a priority matter, revealing that the investigation was initiated at the behest of the official who had been harassing Plaintiffs.
33. Plaintiffs were not informed they were under investigation until it was completed, were not provided notice of specific allegations during the process, and were not afforded meaningful opportunity to respond to allegations or provide exculpatory evidence.
34. The investigation relied heavily on complaints from disgruntled former employees who resented reforms Plaintiffs instituted, while failing to consider extensive exculpatory evidence demonstrating Plaintiffs' effective management and the documented improvements under their leadership.
35. The Inspector General report itself notes that COO Burns stated she had decided by October 2022 that Plaintiffs needed to be removed, well before the investigation concluded in May 2023, revealing that the investigation served to provide post-hoc rationalization for a predetermined decision.
36. An Inspector General special agent disclosed to Ms. McManus that COO Burns requested the investigation and that it was a priority for her, and he acknowledged it was an Accountability Policy Plaintiffs were trying to formalize that was not going to be approved at the time of the investigation.

37. Following their removal, Plaintiffs were assigned to positions providing no meaningful work and utilizing none of their expertise. Ms. Harold was given random projects amounting to busy work. Ms. McManus was relocated three times between May 2023 and March 2024 and assigned tasks that were never implemented.
38. COO Burns gave explicit instructions to the Executive Director of the Office of Security that Plaintiffs were not to be given management opportunities, effectively barring them from positions for which they were qualified.
39. Colleagues and working group members treated Plaintiffs differently, openly speculating about the reasons for their removal. News coverage and internal notices created false associations between Plaintiffs and problems in handling sexual assault cases, tarnishing their professional reputations.
40. In October 2023, COO Burns unilaterally changed Plaintiffs' Performance Summary Reports in the system of record without engaging them, adding negative information based on the Inspector General investigation despite Plaintiffs never being given opportunity to review or respond to the report.
41. On November 1, 2023, six months after their removal, Plaintiffs were issued Letters of Reprimand imposing additional punishment including five-day suspensions without pay, ineligibility for bonuses or salary increases for two years, and prohibition from serving in management positions for two years. This violated the Agency’s Employee Performance Policy. The Plaintiffs were treated differently than other CIA employees.
42. The Letters of Reprimand violated Agency regulations by being issued without prior counseling, without progressive discipline, and based entirely on the Inspector General investigation without independent assessment.
43. On November 2, 2023, Plaintiffs discovered their Performance Summary Reports had been changed to reflect ratings of "not meeting expectations" for the first time in their three-decade careers. The ratings were based on the Inspector General investigation rather than actual work performance and made no mention of Plaintiffs' substantial accomplishments during the rating period.
44. The cumulative effect of continued retaliation made Plaintiffs' continued employment untenable. They were stripped of meaningful work, barred from management positions, subjected to continued humiliation, and faced ongoing threats of additional adverse

action. The stress manifested in physical symptoms including hair loss, sleep disturbance, anxiety, and elevated heart rate.

45. Faced with intolerable conditions and no realistic prospect of fair treatment, Plaintiffs retired from federal service. Ms. Harold retired at the end of February 2024, and Ms. McManus retired at the end of March 2024. Their retirements constituted constructive discharges compelled by discriminatory and retaliatory treatment.

46. The Deputy of the Office of General Counsel, a white official, was found to have engaged in discrimination or wrongdoing but was not subjected to swift and severe disciplinary actions, immediate removal, security escort, or public humiliation comparable to Plaintiffs' treatment.

47. In the "scarf case" involving criminal conduct, the employee found guilty in court remained in position until the criminal case was fully resolved, contrasting with Plaintiffs' immediate removal upon completion of an investigation without opportunity to challenge findings.

48. A senior executive in the Office of Inspector General who was removed from a leadership role was allowed to remain in another position within the office until securing full retirement benefits, receiving a soft landing that preserved financial security and professional dignity that was denied to Plaintiffs.

49. In several instances, when the Office of Inspector General received allegations of harassment against managers and senior personnel, the Inspector General declined to investigate and referred matters back to components for resolution, allowing accused officials to remain in positions. Plaintiffs were afforded no such consideration.

50. The swiftness of Plaintiffs' removal, severity of discipline imposed, public humiliation through security escorts, and prohibition on management opportunities exceeded what other senior officials faced for comparable or more serious misconduct, reflecting discriminatory decision-making influenced by Plaintiffs' race.

51. COO Burns's pattern of characterizing Plaintiffs as "confused" invoked racial stereotypes about Black people's intellectual capacity and reflected racial bias.

52. COO Burns's pattern of crediting white officials' accounts over Plaintiffs' assessments without inquiry demonstrated racial bias in determining whose judgment and credibility deserved respect.
53. The disparity in resources provided to programs led by white officials compared to resources provided to Plaintiffs' office reflected differential valuation of work based on race.
54. The temporal proximity between Plaintiffs' protected disclosures and the escalation of adverse actions, particularly their removal within hours of meeting with the Intelligence Community Inspector General, establishes retaliatory intent.
55. The gratuitous nature of actions such as security escorts for officials with decades of exemplary service demonstrates intent to humiliate and punish beyond what any legitimate interest could justify.
56. The failure to follow established procedures and violations of Agency regulations in taking actions against Plaintiffs demonstrates that officials departed from normal protocols to accomplish discriminatory and retaliatory objectives.

---

## COUNT I

## DISPARATE TREATMENT BASED ON RACE

57. Plaintiffs incorporate by reference all preceding paragraphs.
58. Plaintiffs are African American women who belong to a protected class under Title VII.
59. Plaintiffs were qualified for their positions as Director and Deputy Director of the Office of Equal Employment Opportunity, as demonstrated by their decades of exemplary service.
60. Plaintiffs were subjected to adverse employment actions including removal from leadership positions, security escorts, assignment to positions with no meaningful duties, prohibition from management opportunities, Letters of Reprimand, negative performance evaluations, and constructive discharge.
61. Similarly situated white employees were treated more favorably than Plaintiffs, as evidenced by the comparator evidence showing white officials facing allegations of

misconduct received measured responses, procedural protections, and substantially less severe consequences.

62. Race was a motivating factor in the adverse employment actions taken against Plaintiffs, as demonstrated by the invocation of racial stereotypes, patterns of differential treatment, disparities in credibility determinations and resource allocation, and witness observations of racial animus.

63. The explanations offered by the Agency for its treatment of Plaintiffs are pretextual, as the claimed reliance on a fundamentally flawed investigation that was predetermined in outcome and instigated by a supervisor with discriminatory animus does not constitute a legitimate, nondiscriminatory reason.

64. As a direct and proximate result of this unlawful race discrimination, Plaintiffs have suffered economic losses, severe emotional distress, reputational harm, and loss of enjoyment of life.

---

**COUNT II**

**RETALIATION FOR PROTECTED EEO ACTIVITY**

65. Plaintiffs incorporate by reference all preceding paragraphs.

66. Plaintiffs engaged in protected activity under Title VII by reporting discrimination to senior Agency officials, expressing intent to file EEO complaints, seeking assistance from the Agency Ombudsman, filing formal EEO complaints, and making protected disclosures to the Intelligence Community Inspector General.

67. Following their protected activity, Plaintiffs were subjected to materially adverse employment actions including removal from positions, security escorts, professional isolation, meaningless work assignments, prohibition from management opportunities, Letters of Reprimand, negative performance evaluations, and constructive discharge.

68. A causal connection exists between Plaintiffs' protected activity and the adverse actions, as demonstrated by temporal proximity, with removal occurring within hours of meeting with the Intelligence Community Inspector General, and additional discipline following in months thereafter.

69. COO Burns requested the Inspector General investigation and identified it as a priority, demonstrating orchestration of events to accomplish a predetermined goal of removing Plaintiffs in retaliation for their protected activity.
70. The adverse actions were sufficiently severe to dissuade a reasonable employee from engaging in protected EEO activity.
71. As a direct and proximate result of this unlawful retaliation, Plaintiffs have suffered economic losses, severe emotional distress, reputational harm, and loss of enjoyment of life.

## COUNT III

## HOSTILE WORK ENVIRONMENT BASED ON RACE

72. Plaintiffs incorporate by reference all preceding paragraphs.
73. Plaintiffs were subjected to a hostile work environment based on race throughout their tenure, consisting of repeated instances of racially motivated harassment including characterizations invoking racial stereotypes, dismissal of their professional judgments based on racial bias, preferential crediting of white officials' accounts, disparate allocation of resources, public humiliation and degradation, and systematic efforts to undermine their authority.
74. The harassment was severe and pervasive, occurring continuously throughout Plaintiffs' tenure and affecting every aspect of their work environment, fundamentally altering the terms and conditions of their employment.
75. The harassment was based on Plaintiffs' race, as demonstrated by differential treatment compared to white officials, invocation of racial stereotypes, patterns reflecting racial bias, and witness observations of racial animus.
76. The hostile environment was created and maintained by officials acting with Agency authority, and the Agency failed to take corrective action despite being informed of the harassment.

77. As a direct and proximate result of being subjected to this hostile work environment, Plaintiffs have suffered economic losses, severe emotional distress, reputational harm, and loss of enjoyment of life.

## COUNT IV

## RETALIATORY HOSTILE WORK ENVIRONMENT

78. Plaintiffs incorporate by reference all preceding paragraphs.
79. Following and because of their protected activity, Plaintiffs were subjected to a hostile work environment consisting of removal from positions, security escorts, professional isolation, meaningless work assignments, prohibition from management opportunities, additional discipline, negative performance evaluations, and constructive discharge.
80. The retaliatory harassment was severe and pervasive, continuing from the time Plaintiffs first reported discrimination in 2022 through their forced retirements in early 2024.
81. The retaliatory harassment would dissuade a reasonable employee from engaging in protected activity, as the swift and severe retaliation sent a clear message that employees who complain of discrimination will face severe consequences.
82. As a direct and proximate result of being subjected to this retaliatory hostile work environment, Plaintiffs have suffered economic losses, severe emotional distress, reputational harm, and loss of enjoyment of life.

---

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant as follows:

A. Declaring that Defendant violated Title VII by discriminating against Plaintiffs on the basis of race;

B. Declaring that Defendant violated Title VII by retaliating against Plaintiffs for engaging in protected EEO activity;

C. Declaring that Defendant subjected Plaintiffs to a hostile work environment based on race in violation of Title VII;

D. Declaring that Defendant subjected Plaintiffs to a retaliatory hostile work environment in violation of Title VII;

E. Awarding Plaintiff Evetta Harold compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000) for economic losses, emotional distress, reputational harm, and loss of enjoyment of life;

F. Awarding Plaintiff Kim McManus compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000) for economic losses, emotional distress, reputational harm, and loss of enjoyment of life;

G. Awarding Plaintiffs their reasonable attorney's fees and costs incurred in this action;

H. Awarding pre-judgment and post-judgment interest as allowed by law;

I. Ordering equitable relief including expungement of negative materials from Plaintiffs' personnel records and correction of performance records;

J. Granting such other and further relief as the Court deems just and proper.

---

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

---

Respectfully submitted,

/s/ Charles Tucker Jr Esq.
Charles Tucker Jr Esq.
Bar No. 993515
Tucker McCann Law Group LLP
4933 Auburn Avenue 2nd Floor
Bethesda, MD 20814
O: 301-338-6331
E: ctucker@tuckermccanngroupllp.onmicrosoft.com

Counsel for Plaintiffs
Evetta Harold and Kim McManus

Dated: ________11/19/2025__________